No. 2046

Second Circuit Appeal

## SMITH - SPENGLER REAL ESTATE AGENCY v. CENTRAL LOUISIANA MOTOR CAR COMPANY

(January 19, 1925, Opinion and Decree.)

*(Syllabus by the Editor.)*

1. Louisiana Digest—Sales—Par. 42, 49, 111, 112.

Where A contracts with an automobile dealer to purchase a new car, giving his

old car in as part payment at an agreed price, the agreement being transferable, a transfer of this agreement to B with the stipulation in the transfer made from A to B that "I hereby subrogate to said transferee, all rights, actions and privileges that I may have in the premises, and particularly to sue and recover in their own name for their own account for the price" of the old car *held* that this transfer gave A or his transferee no right to recover of defendant the price of the old car, except upon defendant's refusal or failure to comply with its agreement to sell to the holder of the contract a new car at the price stipulated and to allow credit thereon for the old car.

2. **Louisiana Digest—Appeal—Par. 625.**
A question of fact that an automobile dealer did not default on his contract to deliver a new automobile being correctly decided by the trial court according to the evidence is affirmed.

3. **Louisiana Digest—Sales—Par. 150.**
In a contract of sale of an automobile in which an old automobile was taken in trade, it was not necessary for the automobile dealer to make a real tender of the new automobile where the purchaser had informed the automobile dealer that he could not accept the car.

Appeal from the Parish of Rapides, Hon. Leven L. Hooe, Judge.

This is a suit brought by the transferee of a contract of sale to recover $485.00 the amount which an automobile dealer allowed for an old automobile as part payment on a new one.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

S. B. Pressberg, of Alexandria, attorney for plaintiff, appellant.

White, Holoman & White, of Alexandria, attorneys for defendant, appellee.

ODOM, J. On August 16, 1919, one J. O. Davis entered into a contract with the defendant company by which he agreed to purchase from it a new Maxwell automobile for the price and sum of $1,085.00, on the following terms, to wit:

He delivered to defendant a Dort car, which he then owned for which he was to get credit on the new car for the sum of $485.00. The balance was to be paid $100.00 cash when the new car was delivered and $50.00 per month until the entire price was paid. As representing the deferred payments he was to execute notes.

The new car which he agreed to purchase was to be delivered to him "out of the first shipment of automobiles to reach Alexandria". The contract is in writing signed by J. O. Davis, and accepted by defendant company. The contract, by its specific terms is not transferable.

Davis, it seems was not able to carry out his agreement to purchase the new car because, according to his testimony, he had sickness in his family and he was not able to get the money.

His contract with defendant company contained the following stipulations:

"It is understood and agreed that title of ownership of car as described above does not pass to me until final cash payment is made, and if I fail to make settlement as agreed, the above payment of cash or other credits or both shall remain the property of the Central Louisiana Motor Car Company or Mrs. Lennie W. Smith, proprietor as a forfeit."

Whatever may be the meaning and legal effect of the last quoted sentence, it would seem that Davis understood that if he failed to purchase the new car upon the terms and conditions set out in the written contract, he forfeited the Dort car which he had deposited with defendant, and for which he was to get credit for $485.00 on the new car.

But in order that he might be able to use the credit which he had with defendant company, a new contract was entered into April 16, 1920.

This new contract was identical with the first one, with the following exceptions:

The price of the new car was to be $1,270.00 instead of *$1,085.00, the ten deferred monthly payments to be $68.50 instead of $50.00, and the new car was to be delivered by defendant "as available".—and whereas the old contract was not transferable the new one was made transferable.

As stated his new contract was signed on April 16, 1920. For some reason Davis could not comply with his agreement, and on July 30, 1920, he assigned the contract to the plaintiff herein. The written assignment which is found on reverse side of contract reads, in so far as is necessary to quote it, as follows:

"For a valuable consideration, I hereby sell, assign, transfer and deliver unto Smith-Spengler Real Estate Agency the above and foregoing contract and I hereby subrogate to said transferee, all rights, actions and privileges that I may have in the premises, and *particularly to sue and recover in their own name* and for their own account for the price of four hundred eighty-five (485.00) dollars due me by the Central Louisiana Motor Car Co."

This suit is to recover the $485.00.

It is the contention of plaintiffs that defendant violated its agreement to sell and deliver a new car to Davis, and they allege "your petitioner has placed defendant in default by making demand on defendant for the said automobile and by offering to comply with the obligations assumed by the said Davis in said contract, and notwithstanding said demand and offer, the defendant has failed and refused to comply with said contract". Defendants contention is that it complied with its obligation by offering at various times to deliver a new car to Davis, and that finally in the early part of June, 1920, it made a tender of a new car to him, which he failed to accept. This alleged tender was made prior to the date on which Davis transferred his contract to plaintiffs.

Whether the contract entered into between Davis and the defendant evidenced a sale or was merely an agreement to purchase an automobile need not be discussed. It is clear, however, that it gave A, or his transferee no right to recover of defendant the price of the old car, except upon defendants refusal or failure to comply with its allegation to sell to the holder of the contract a new car at the price stipulated and to allow credit thereon for the old car. The question, therefore, for us to determine, is whether defendant has defaulted on its contract. If it has, it is bound to restore the old car accepted by it as a deposit or advance payment on a new car.

Quite a bit of testimony was introduced showing what took place between Davis and defendant between August 1919, the day on which the original contract was signed and April 16, 1920, the day on which the last one was signed. But we think that has no bearing upon the case because the old contract was set aside by the new one. We may say, however, that the testimony makes it perfectly clear that Davis could not comply with his contract, and that defendant was not only willing to carry out the contract, but was able and offered to do so.

Davis says that after the second contract was made, he saw a representative of the defendant firm who urged him to make an effort to sell his contract and thereby save his equities thereunder. He says also that defendant offered him a car, approximately one month after the second contract was entered into, and that he could not purchase it because he had no money. He says that he tried a number of times to sell the contract, and that finally he did sell it to plaintiff in this case.

Some time after the plaintiff acquired the contract from Davis, they both went to defendant's garage and according to his

testimony were looking at the cars, when Mr. Lennie Smith asked them what they wanted and they told him they were figuring on getting a car;—and that said Lennie Smith told them that they had a second hand Maxwell car for sale; and that said Smith, defendant, then had an employee demonstrate the car by "driving us around in it".

Smith, one of plaintiffs, says that he then endeavored to "make a deal with her on the second hand car and she wouldn't do it". And speaking of the contract, he was asked:

"Q. You didn't pull it until you made a deal in regard to the other second hand car?
"A. No, I simply asked her how she would trade.
"Q. Not until she had made you a price on this second hand car did you pull out this contract?
"A. No.
"Q. Then you wanted her to give you the second hand car on this contract?
"A. Yes, sir.
"Q. And she declined to do that?
"A. Yes, sir."

Smith, one of the plaintiffs, testified, that when defendant refused to accept the contract or rather the $485.00 credit, on the purchase of a second hand car, he then offered to purchase a new car on the terms and under the conditions set out in the contract, and that defendant refused to make a sale, saying the contract was not worth the paper it was written on.

S. C. Spingle, one of the plaintiff, corroborated the testimony of his co-plaintiff to the extent that they offered to carry out the contract by purchasing a new car. The testimony on this point however, is contradicted by Mrs. Lennie Smith, her husband and their kinsman and employee, H. C. Sumlin. Each of these witnesses says that plaintiff wanted to purchase a second hand car and wanted defendant to accept the credit on the old car under the contract in payment of a second hand car, and that they did not offer to purchase a new car.

Our conclusion is that plaintiffs did not at any time make a bona fide offer to carry out the contract by purchasing a new car. While Mr. Smith and Spengler, plaintiffs, both say that they were ready, willing and able to carry out the contract and that they offered to do so, we are not convinced that they did what they should have done. We are inclined to think that these witnesses were not quite as accurate as they should have been, probably on account of the fact that something like two and a half years elapsed between the date on which the transaction occurrd and date on which the transaction occurred and date ··For instance, Mr. Smith, one of the plaintiffs says that he and his partner, Mr. Spengler, went to defendant's garage together and looked over the cars and found a second hand Maxwell, in which an employee of defendant drove them around. He makes it plain that Spengler was with him at that time. (T. page 28) whereas Spengler testifies (T. p. 36.):

Q. Did you look at a second hand Maxwell?
A. I looked at a car, but I think it was several months before this came up that I was out in a car that she had for sale, but I think it was a Ford.

And in the same connection he says that he does not recall that any price was made or any terms reached on a second hand car. He says that when he went with Smith, "Smith had the contract in his hand and offered to go into it and Mrs. Lennie Smith wouldn't consider any negotiations at all". And yet, Mr. Smith testified (T. page 28.)

"Q. Didn't you discuss with Mrs. Lennie Smith the purchase of a second hand automobile?
"A. Yes, sir.

"Q. Didn't you offer this contract in connection with the purchase of this second hand automobile?

"A. I did.

"Q. And wasn't it then she told you that this contract was no good?

"A. Mr. Spengler and myself needed the car and we went down to see Mrs, Lennie Smith and she was busy and we looked over the garage and saw there were no new Maxwells on the floor, and Mr. Smith asked us what we wanted, etc., and on page 33 of the testimony, Smith says that it was only after they began talking terms on a second hand car that he mentioned the contract. He says and Spengler says, they were together, and yet Spengler did not hear the second hand car discussed and says that he did not go out with his partner in the second hand Maxwell."

The testimony of Smith and Spengler, the plaintiffs, is at variance on a very material point, to wit: Whether the contract was offered on a second hand car.

While they agree that they offered to purchase a new car on the terms of the contract, yet we are inclined to think they may be mistaken on that point, as they, or one of them at least, was mistaken on another point; therefore, in view of the testimony of the witnesses for defendant that no offer was made to purchase the new car, our conclusion is that plaintiff made no bona fide effort to get defendants to comply with the terms of the contract. We doubt if plaintiffs wanted a new car or ever expected to take one. Our opinion on this point is strengthened by the very wording of the assignment of the contract to them by Davis. Davis sells to plaintiffs the "above and foregoing contract and I hereby subrogate the said transferee to all rights, actions and privileges that I may have in the premises, and *particularly to sue and recover in their own name and for* *their* own account the price of four hundred eighty-five ($485.00) dollars due by the Central Louisiana Motor Car Co'".

The wording of this transfer indicates that these parties had in mind the recovery of the $485.00, rather than the purchasing of a new car.

A great deal of testimony was introduced to show that defendant made no tender of a new car to Davis.

No formal, real tender was necessary under the circumstance of this case.

To have made one would have been to do a vain, idle thing. Davis had informed defendant on every occasion that he could not accept the car, and finally the contract was made transferrable in order to give him a chance to realize something from it. Defendant finally informed him that if he did not accept the car, his rights under the contract would be declared forfeited on a certain date. We think defendant had the right to do that under the circumstances of this case. Defendant could not be expected to hold the matter open indefinitely.

The demands of plaintiff were rejected by the District Judge. We are not informed as to whether he took the view that defendant made a tender of the car to Davis or to his assignee, the plaintiff and was henceforth discharged from further obligations under the contract, or whether he held that plaintiff had not fulfilled his duties under the contract.

We think his decision in rejecting plaintiff's demand on either ground was warranted.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed with cost.